IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUG 10 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

WiAV SOLUTIONS LLC

     Plaintiff,

v.                                        Civil No. 3:09cv447

MOTOROLA, INC. et al.,

     Defendants.


## MEMORANDUM OPINION

This matter is before the Court on the Defendants'
MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT AND
NO PRE-SUIT DAMAGES (Docket No. 314). For the reasons set
forth below, the motion is granted to the extent that it
seeks to limit pre-suit damages and denied as moot to the
extent that it seeks summary judgment for no willful
infringement.


## BACKGROUND

The Plaintiff, WiAV Solutions LLC ("WiAV") asserts a
claim against the Defendants, Motorola, Inc., Nokia, Inc.
and Nokia Corp. (collectively "the Defendants") for
infringement of U.S. Patent No. 6,539,205 (the "Patent").[1]

---

[1] WiAV also brought a claim for willful infringement of the
Patent and the Defendants moved for summary judgment to
dismiss that claim. Since the filing of the Defendants
motion, the parties have stipulated dismissal of the
willful infringement claim. (See Docket No. 320). Thus,

1

As part of that claim, WiAV seeks to recover damages resulting from past infringement of the Patent. The Defendants bring this motion for summary judgment to bar pre-suit damages.[2] The following facts are relevant to the motion.

The Patent improves communication quality by providing a method for monitoring the quality of a traffic channel and modifying transmission coding in response to the quality. These steps are called "link adaptation." (Pl. Opp. at 3.) WiAV alleges that in implementing the EDGE and WCDMA-HSDPA standards, certain of the Defendants' cell phones infringe the Patent. (Def. Mem. at 2; Pl. Opp. at 2.)

The pending patent rights were assigned to Skyworks on November 5, 2002 as part of a merger. (Def. Mem. at 3.) The Patent was issued on March 25, 2003. (Id.) WiAV purchased the Patent from Skyworks on December 31, 2007. (Id.) At that time, and later, several companies were granted licenses to practice the Patent.

---

the Defendant's motion, to the extent it seeks summary judgment for no willful infringement, is denied as moot.

[2] WiAV is not pursuing pre-suit damages that accrued from December 31, 2007 until July 14, 2009, the date the complaint was filed. It seeks damages only from July 14, 2003 until December 31, 2007 and after the filing of the Complaint on July 14, 2009. (Pl. Opp. at 1 n.2.)

## I.  Skyworks Solutions

From the time the Patent was issued on March 25, 2003 until December 31, 2007, when Skyworks sold the Patent to WiAV, Skyworks was authorized by ownership to practice the Patent.  When WiAV purchased the Patent on December 31, 2007, WiAV granted Skyworks a license to practice the Patent.  (Def. Mem. at 3.)

Beginning in September 2005, Skyworks offered for sale the SKY832 Baseband Processor for Multiband GSM, GPRS, and EDGE applications.  (Def. Ex. 27 at 30:20-31:8.)  The SKY832 baseband chip was part of a platform called LYNX L9100.  (Def. Ex. 28.)  The mark "LYNX" was a registered trademark for use in "[r]adio frequency and baseband wireless communications equipment, namely,...signal processors, namely baseband processors,...cellular and telephone handsets...baseband wireless equipment...and communications software for use in operating wireless communication equipment."  (Def. Ex. 51.)  As part of the trademark registration process, Deanna Brown, Corporate Legal Counsel for Skyworks declared that Skyworks "is using or is using through a related company or licensee the mark in commerce on or in connection with all goods and/or services listed."  (Id.)

3

## II.  Mindspeed Technologies

At the time WiAV bought the Patent from Skyworks, WiAV was notified that Mindspeed Technologies, Inc. ("Mindspeed") had a license to practice the Patent. (Def. Ex. 5 at WIAV0000146.) Before WiAV purchased the Patent, Mindspeed sold a series of products capable of supporting the AMR Codec for EDGE. (Def. Ex. 19 at 12:24-14:10.) Those products include Mindspeed's M82501, M82505, M82506, M82510, M82511, M82514, M82515, M82520, M82524, M82530, M82610, M82710, M82910, M82803, M82805, M82810, M82815 and M82820. (Def. Ex. 20.) The Mindspeed products are processors or chips used in infrastructure equipment. (Pl. Ex. 5 at 6; Pl. Ex. 6 at 5.)

## III. LG

On November 13, 2007, LG Electronics, Ltd. ("LG") entered into an agreement with WiAV, whereby it was granted a portfolio license to WiAV patents already, or subsequently, acquired from Skyworks. (Def. Ex. 30 at § 2(c).) Thus, when WiAV acquired the rights to the Patent on December 31, 2007, LG obtained a license to the Patent. (Def. Ex. 30 at § 2(c); Def. Ex. 9 at 119:17-20.) Since that time, LG has been making products under its license that implement the AMR codec. (Def. Ex. 9 at 120:3-9.) LG is not obligated to mark any of its products under its

4

agreement with WiAV.  (Def. Ex. 14 at 11.)  And, LG has not marked the Patent on any products.  (Def. Ex. 31. at 10.)

## IV.  Research in Motion

Research in Motion ("RIM") has a license to the Patent.  (Def. Ex. 14 at 9.)  The licensing agreement was entered into, and became effective, on June 1, 2009.  (Def. Ex. 32 at WIAV0000074, WIAV0000083-84.)  Under the licensing agreement between WiAV and RIM, RIM is not obligated to mark any of its products supporting the EDGE AMR Codec or HSDPA with the Patent.  (Def. Ex. 9 at 184:19-185:3.)  And, RIM has not marked any of its Blackberry products with the Patent.  (Def. Ex. 31 at 10.)

## V.  Apple

Apple has a license to the Patent.  (Def. Ex. 36; Def. Ex. 14 at 10.)  The license agreement is dated December 29, 2008.  (Def. Ex. 36 at WIAV0000167.)  Under the agreement, Apple is not required to mark any of its products with the Patent.  (Def. Ex. 14 at 10; Def. Ex. 9 at 180:22-181:4.)  Apple has not marked any of its products, including the iPhone 3G, with the Patent.  (Def. Ex. 31 at 10.)

## VI.  HTC Corporation

HTC Corporation ("HTC") has a license to the Patent.  (Def. Ex. 37; Def. Ex. 9 at 158:10-12, 162:4-6)  The effective date of the license agreement between WiAV and

HTC is June 29, 2009. (Def. Ex. 37 at WiAV0000203, WIAV0000226.) HTC is not obligated to mark any of its mobile phones with the Patent. (Def. Ex. 9 at 181:11-22.) And, HTC has sold products that support the EDGE AMR Codec and HSDPA without marking them with the Patent. (Def. Ex. 31 at 10.)

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case. See FED. R. CIV. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id.

Hence, summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a "showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

Nevertheless, a party cannot create a genuine issue of material fact through unsupported opinions. See Davis v. Brouse McDowell, L.P.A., 596 F.3d 1355, 1364 (Fed. Cir. 2010). Accordingly, the party who bears the burden of proof at trial cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp., 477 U.S. at 327.

## II. The Marking Statute

The Patent Act encourages patentees and persons making, selling, or offering for sale a patented article in the United States, or importing a patented article into the United States, to give notice of the patent to the public by fixing the patent number on the patented article or packaging. 35 U.S.C. § 287(a). When there is a failure to mark a patented article "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement

and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."  35 U.S.C. § 287(a).

The patentee bears the burden of showing compliance with the marking statute by a preponderance of the evidence.  Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998).  Where "the nonmovant bears the burden of proof...the movant need not 'produce evidence' showing the absence of a genuine issue of material fact in order to properly support its summary judgment motion."  Exigent Tech., Inc. v. Atrana Solutions, Inc. 442 F.3d 1301, 1307-08 (Fed. Cir. 2006) (citing Celotex, 477 U.S. at 325).

**III. Application of the Marking Statute**

**A.   The Undisputed Failures to Mark**

Here, there are four identified licensees, other than Mindspeed and Skyworks, who were authorized to practice the Patent.  LG obtained a license to the Patent on December 31, 2007.  (Def. Ex. 30 at § 2(c); Def. Ex. 9 at 119:17-20.)  RIM received a license to the Patent on June 1, 2009.  (Pl. Ex. 32 at WIAV0000074, WIAV0000083-84.)  Apple's license to the Patent became effective on December 29, 2008.  (Def. Ex. 36 at WIAV0000167.)  Finally, HTC's received a license on June 29, 2009.  (Def. Ex. 37 at

WIAV0000203, WIAV0000226.)  It is undisputed that none of these companies were obligated to mark their products with the Patent prior to obtaining a license and that none of them did in fact mark their products.  Thus, beginning on December 31, 2007, patented articles were undoubtedly made, sold or offered for sale without being marked.[3]

## B.  Triggering the Marking Statute

While WiAV concedes, as it must, that LG, RIM, Apple and HTC sold unmarked products, WiAV asserts that the alleged sales or offers for sale by Mindspeed and Skyworks did not trigger the requirement to mark under the statute. (Pl. Opp. at 8.)  And, if the requirement to mark is not triggered, says WiAV, the failure to mark does not result in a bar to pre-suit damages from July 14, 2003 through December 31, 2007.  As a threshold matter, the Court must determine whether under the marking statute a patent holder is permitted to parse the damages period in the manner suggested by WiAV.

Statutory interpretation begins with the plain language of the statute.  <u>Jiminez v. Quarterman</u>, 129 S.Ct.

---

[3] Because it is undisputed that covered products were sold by these four licensees, WiAV excludes from its request for damages the time period from December 31, 2007, the date the first licensing agreement became effective, until July 14, 2009, the date that actual notice of infringement was given through the filing of the Complaint in this action.

681, 685 (2009). The "preeminent canon of statutory interpretation requires [courts] to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (citing Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (2002)). When there is no ambiguity in a statute, it must be enforced according to its terms. Jiminez, 129 S.Ct. at 685.

35 U.S.C. § 287(a) states:

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

Thus, § 287 encourages a patent holder to give constructive notice by marking. Giving such notice allows patentees to collect damages for infringement. If a patentee fails to mark, no damages can be collected until actual notice is given, generally through the filing of a complaint.

The Defendants assert that the plain language of the statute means what it says: no damages can be recovered, even those that accrued before a requirement to mark was triggered. Indeed, the Defendants argue that WiAV's position, in essence, would make the statute read: "no damages shall be recovered by the patentee in any action for infringement during the period in which there is a failure to mark, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." The argument, however, ignores the statutory context in which the provision precluding damages appears because the language "[i]n the event of failure so to mark..." doesn't define the period of time covered by the statute. Thus, the statute gives rise to some ambiguity on that point.

In Tulip Comp. Int'l B.V. v. Dell Comp. Corp., 2003 U.S. Dist. LEXIS 5409, at *54 (D. Del. Feb. 4, 2003), the court considered what damages could be awarded the patentee when there were three distinct time periods at issue: (1) a period during which the requirements of § 287 were not triggered; (2) a period during which the patentee failed to mark, even though required by § 287; and (3) a period after which § 287 no longer precluded damages because actual

notice of infringement had been given. The Court held that the language and purpose of the marking statute compelled the conclusion that a patentee can recover damages for infringement during a period of time when § 287 is not triggered, even if § 287 is later triggered and the patentee fails to comply. Id. at *56-7.

In so holding, the court noted that the Federal Circuit has identified three purposes of the marking statute: (1) helping to avoid innocent infringement; (2) encouraging patentees to give notice to the public that the article is patented; and (3) aiding the public to identify whether an article is patented. Id. at *58 (citing Nike, 138 F.3d at 1443). The court went on to explain that the marking statute does not protect all innocent infringers but only those who innocently infringe because a patentee puts unmarked products into the marketplace. Tulip, 2003 U.S. Dist. LEXIS 5409, at *59. "In other words," said the court, "it is only when the patentee is himself contributing to the problem of innocent infringement by producing unmarked product that § 287(a) punishes that patentee by precluding damage recovery." Id. at 59-60. And, under that logic, it follows that a patentee who is not required to mark is not contributing to the problem of

innocent infringement, and thus, should not be punished through the preclusion of damages.

The Defendants take a different view of the effect of the purposes of the statute on this issue. They assert that allowing the patentee to choose the periods during which it wants to provide notice and then allowing it to exclude those periods during which notice was not given for purposes of damages simply renders the statute ineffective at achieving its principal purpose: to provide notice. The Defendants argument, however, presumes that the patentee was required to, but chose not to, mark its products. In that case, the patentee should be precluded from collecting damages until actual notice is given and should not be allowed to parse time periods to avoid the consequences of its failure to comply with the marking statute.

Here, however, enforcing the statute as the Defendants read it penalizes the patentee for failing to comply with a statute that the patentee was not required to comply with in the first place. And, it is simply unreasonable to read the statute in this manner. Therefore, the Court holds that a patentee is not precluded from collecting damages for a period in which marking was not required even if the requirements of the marking statute were later triggered

and the patentee failed to comply. This conclusion is most consistent with the purpose of the statute.

Having concluded that a patentee is permitted to collect damages for a period during which the marking statute is not triggered, even if it later is triggered and the patentee fails to mark, it is necessary next to consider whether there is a genuine issue of material fact as to whether the marking statute was triggered at any point from July 14, 2003 until December 31, 2007. As a preliminary matter, WiAV contends that the Defendants bear the burden of showing that the marking statute is applicable. WiAV cites no law to support that assertion. Moreover, the law is clear that the patentee bears the burden of showing compliance with the marking statute. Dunlop v. Schofield, 152 U.S. 244, 248 (1894). This includes the burden of showing that the patentee is not subject to the requirements of § 287(a). DR Sys., Inc. v. Eastman Kodak Co., 2009 U.S. Dist. LEXIS 75549, at *10-13 (S.D. Cal. Aug. 25, 2009). Thus, WiAV bears the burden of showing that it, and its licensees, were not required to mark under § 287 from July 14, 2003 until December 31, 2007.

### 1. The Mindspeed Products

35 U.S.C. § 287(a) allows for notice through marking of a "patented article." § 287(a) thus "limits the extent to which damages may be recovered where **products covered by a U.S. Patent** are sold without the notice defined in the statute." <u>Tex. Digital Sys., Inc. v. Telegenix, Inc.</u>, 308 F.2d 1193, 1220 (Fed. Cir. 2002) (emphasis added).

According to WIAV, the Mindspeed products "*did not and could not* by themselves practice the invention claimed in the '205 Patent." (Pl. Opp. at 9.) And, says WiAV, because the Mindspeed Products are not covered by the Patent, sale of those products does not trigger an obligation to mark under § 287(a). In support of its assertion, WiAV offers scant support. First, WiAV asserts that a Mindspeed witness testified that the Mindspeed products did not practice the Patent. In fact, the deposition testimony of the Mindspeed witness shows that the witness could not say whether or not the Mindspeed Products practiced the Patent. (<u>See</u> Def. Ex. 19 at 9:21-10:22.)

WiAV next asserts that Mindspeed's 10k reports as well as Mindspeed literature demonstrate that the products are not covered by the Patent. First, Mindspeed's 2006 10k report states: "Our products, ranging from optical network transceiver solutions to voice and Internet protocol (IP)

15

processors, are sold to original equipment manufacturers (OEMs) for use in a variety of network infrastructure equipment, including mixed media gateways, high-speed routers, switches, access multiplexers, cross-connect systems, digital loop carrier equipment, IP private branch exchanges (PBXs) and optical modules." (Pl. Ex. 6 at 5.) Further, literature on the Mindspeed Comcerto Processor states that the "M82910 also supports Mindspeed's mix-and-match technology allowing active voice channel to operate a plethora of different voice codecs." (Def. Ex. 21.) This, argues WiAV, shows that Mindspeed sells chips, rather than handsets, that are sold to OEMs and can be put together in various ways. And, WiAV draws the conclusion that, because the Mindspeed products are chips put together in a variety of ways, they do not practice the Patent.

Based on the record before the Court, which includes only the documents cited above, neither a Court nor a jury could conclude that the Mindspeed products do not practice the Patent. Indeed, expert testimony is necessary to draw such a conclusion because of the technical nature of the products and cited material. WiAV offered no expert to support its position.[4]

_____

[4] WiAV did offer a declaration from its expert, Dr. Branimir Vojcic. Dr. Vojcic's declaration, which was the subject of

Finally, WiAV offers a comparison of two GSM standards to show that the Mindspeed products are not covered by the Patent. The first standard, which WiAV asserts related to the Mindspeed products is the AMR speech CODEC standard. (Pl. Ex. 12.) The second standard is the link adaptation standard, which covers the Patent. (Pl. Ex. 15.) Again, without expert testimony that the Mindspeed products are covered by the former standard and not by the latter, WiAV's offer of proof is insufficient.

Thus, on the whole, without expert testimony as to the exhibits cited by WiAV, one cannot draw an inference that the products do not practice the Patent. And, without such testimony, WiAV fails to meet its burden of demonstrating that the marking statute was not triggered.

## 2. The Skyworks Products

WiAV first asserts that the marking statute was not triggered for the Skyworks products because offers of sale are insufficient to trigger the marking requirement. Rather, says WiAV, only distribution of a product triggers the requirement of the marking statute. WiAV's argument is

a motion to strike, was entirely speculative and conclusory. Thus, even if allowed, the declaration does not explain how the passages on which WiAV relies tend to support the conclusion that the Mindspeed products did not practice the Patent.

based on a misinterpretation of both the statute and the relevant decisional law.

Again, the "preeminent canon of statutory interpretation" requires courts to "presume that the legislature says in a statute what it means and means in a statute what it says there." BedRoc, 541 U.S. at 183 (citing Connecticut Nat. Bank, 503 U.S. at 153-54). § 287 provides that notice through marking should be given by patentees and "persons **making, offering for sale, or selling** within the United States any patented article for or under them, or **importing** any patented article into the United States..." Thus, the plain language of the statute requires marking when a product is made, sold, offered for sale, or imported. The statute does not limit the marking requirement to products that are distributed.

In support of its contention that marking is only required upon distribution, WiAV contends that the primary purpose of the marking statute is to give notice and that notice can only be given when a product is distributed. To support this theory, WiAV relies heavily on Am. Med. Sys., Inc. v. Med. Engineering Corp., 6 F.3d 1523, 1537-38 (Fed. Cir. 1993), in which the court held that "[t]he date that [the patentee] began marking its products is irrelevant for purposes of the statute, because marking alone without

distribution provides no notice to the public where unmarked products are continuing to be shipped." WiAV also relies on Wokas v. Dresser Indus., Inc., 978 F. Supp. 839, 843 (N.D. Ind. 1997), in which the court considered when the adverse consequences of a failure to mark arise. Interpreting Am. Med. Sys., the court held that the adverse consequences of a failure to mark begin at the time the products are shipped. Wokas v. Dresser Indus., Inc., 978 F. Supp. 839, 844 (N.D. Ind. 1997). Thus, says, WiAV, under Am. Med. Sys. and Wokas, the adverse consequences of its failure to mark must begin at shipment. And, whereas here, there is no evidence that shipment ever occurred, no adverse consequences follow.

Am. Med. Sys. simply did not address the issue presented here. Instead, the question in that case was when actual notice of the patented article was sufficient such that the patentee could collect damages. Am. Med. Sys., 6 F.3d at 1537-38. And, the court held that, in order to provide **actual notice** through marking, marked products must be distributed. Thus, upon careful reading, Am. Med. Sys. does not support the conclusion that, in order to trigger the marking statute's requirements, a product must be distributed. And, the statutory language

is clear that constructive notice by marking is required when products are made, sold or offered for sale.

WiAV next argues that, even if offers of sale are sufficient to trigger the marking requirements, the offers must be made in the United States and that, here, there is no evidence of sales, or offers to sell, in the United States. The marking requirement applies only to patented products made, sold or offered for sale in the United States. See 35 U.S.C. § 287(a) ("Patentees, and persons making, offering for sale, or selling **within the United States**, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent...") (emphasis added). WiAV asserts that the Skyworks products do not trigger a marking requirement because there is no evidence that the SKY832 was sold or offered for sale in the United States.

To begin, Skyworks' Rule 30(b)(6) witness first testified that, between 2005 and 2007 Skyworks did not offer for sale in the United States "baseband processors that included adaptive multi-rate speech coders." (Def. Ex. 27 at 14:4-10.) However, the same witness later testified, on two occasions, that he did not know if the baseband processors, particularly the SKY832, were offered

for sale in the United States.  (Def. Ex. 27 at 14:25-15:2; 34:8-14.)

The Defendants assert that sale of the baseband processors in the United States may be implied from the declaration in support of Skywork's registration of the "LYNX" trademark.  This is especially so, argue the Defendants, because according to the Patent and Trademark Office, "[u]se of a mark in a foreign county does not give rise to rights in the United States if the goods or services are not sold or rendered in the United States." TMEP § 901.03 (2007).  In response, WiAV argues that the declaration does not establish that each listed product was distributed in the United States.  First, argues WiAV, the phrase "in commerce" as used in the declaration can encompass foreign trade.  <u>See</u> <u>Int'l Bancorp, LLC v. Societe</u> <u>des Bains de Mer et du Cercle</u>, 329 F.3d 359, 364 (4th Cir. 2003) ("'[C]ommerce' under the Lanham Act necessarily includes all the explicitly identified variants of interstate commerce, foreign trade, and Indian commerce."). Further, Skyworks attached a shipping label to its declaration of use for a shipment of 5000 units of the SKY77331-15 to South Korea.  (Def. Ex. 51 at 13.)  This, says WiAV, created an inference that Skyworks declared a use in commerce based on its use in foreign trade.  (Pl.

Opp. at 12.) And, that inference, WiAV argues, is also supported by Skyworks' 2005 Annual Report, which shows that in the years 2004 and 2005, less than ten percent of Skyworks' net revenues came from sales in the United States. (Pl. Ex. 8 at 97.) Of course, the Annual Report also establishes that Skyworks did produce revenue in the United States, albeit a small percent of overall revenue. And, on the record, it is unknown whether that small percent includes revenues generated by sales of products covered by the Patent. Moreover, the declaration, given a reasonable extraction, tends to show offers to sell in the United States. And, WiAV did not prove otherwise.

The Defendants also assert that distribution in the United States is implied from a Skyworks website. WiAV first states that the mere existence of the website does not support an inference of distribution in the United States. (Pl. Opp. at 13.) Further, according to WiAV, this website is unauthenticated and, even if used by Skyworks, could have been used to promote sales outside the United States. This is particularly so, argues WiAV, because the Skyworks website promoted two GSM/EDGE bands (900 and 1800) not supported in the United States. (Pl. Am. Ex. 3.) WiAV's argument here is unavailing because the website also promoted a GSM/EDGE standard, the 1900, which,

according to the record, is supported in the United States. The website, therefore, tends to show offers for sale in the United States. It was up to WiAV to show otherwise, and it did not do so.

Finally, the Defendants rely upon an offer of sale of the SKY832 to Motorola to show that offers to sell were made in the United States. According to the Defendants, between 2005 and 2007, Skyworks offered for sale to Motorola the SKY832 processor. (Def. Ex. 27 at 41:5-22.) WiAV asserts that this is not so because, as of September 29, 2006, Skyworks discontinued its baseband operations. (Pl. Ex. 7 ay MOTO-WIAVS0000086434 ("During the fourth fiscal quarter of 2006, Skyworks began the restructuring of its business by discontinuing its baseband operations...")). And, argues WiAV, other than the fact that Skyworks made an offer for sale of the SKY832 to Motorola, there is no information about the time or place of the offer for sale, which could have been made to one of Motorola's worldwide offices. (See Pl. Ex. 9.)

Upon careful review of the evidence as a whole, WiAV falls short of meeting its burden. Indeed, rather than meeting its burden, WiAV in effect attempts to shift the burden to the Defendants by arguing that there is no evidence of sales in the United States. In doing so, WiAV

certainly presents minimal facts and arguments that suggest that some, perhaps even many, sales could have occurred outside of the United States. But, it has failed to offer evidence that no sales, or offers to sell, were made in the United States other than the statement of Skyworks' 30(b)(6) witness, who first testified that, between 2005 and 2007, Skyworks was not offering to sell baseband processors in the United States and then contradicted that by stating that he did not know whether or not baseband processors were offered for sale in the United States. And, reviewing the evidence as a whole, no reasonable jury could find that WiAV has carried its burden of showing that no sales were made in the United States on the record before the Court.

WiAV must concede that LG, RIM, Apple, and HTC, beginning on December 31, 2007 sold or offered for sale patented articles without marking them. Additionally, WiAV has failed to meet its burden of showing a genuine issue of material fact of whether the Mindpseed and Skyworks products triggered the marking requirements. Further, it is undisputed that the Mindspeed and Skyworks products were unmarked. Thus, under § 287, WiAv is barred from collecting damages before July 14, 2009, when actual notice

of infringement was given through the filing of the complaint.

## CONCLUSION

For the reasons set forth above, the Defendants MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT AND NO PRE-SUIT DAMAGES is granted to the extent that it seeks to limit pre-suit damages and denied as moot to the extent that it seeks summary judgment for no willful infringement.

It is so ORDERED.

_____/s/_____ *REP*
Senior United States District Judge

Richmond, Virginia
Date: August 10, 2010