IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E

AUG – 8 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

WIAV SOLUTIONS, INC, )
)
Plaintiff, )
)
v. ) Case No.: 3:09-cv-447
)
MOTOROLA MOBILITY, INC., *et al.*, )
)
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This case is before the Court for claim construction. The Court conducted a *Markman* hearing on the disputed claim terms on July 13, 2011. This Memorandum Opinion and Order provides constructions of the disputed terms addressed at the hearing.

The patents-in-suit relate to speech coding techniques, used to reduce the amount of bandwidth necessary to transmit a speaker's voice in a wireless environment where bandwidth is limited, such as in cellular networks. Devices that perform coding and decoding of speech are referred to as "codecs." By reducing the amount of data used to describe speech signals, the coding process saves bandwidth and increases capacity in wireless systems. The patents relate to techniques used to transmit speech at low bit rates. The patents-in-suit refer to several speech coding concepts, such as "analysis by synthesis," "residual signals," "pitch," and "fixed and adaptive codebooks," which all relate to the process of coding speech.

I. Legal standards for claim construction

Construing the claims of a patent presents a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–78 (Fed.Cir.1995), aff'd. 517 U.S. 370 (1996). The district court has the "power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Id.* at 979. Generally, a claim term is to be given the "ordinary and customary meaning" it would have had to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp..* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); see also *Dow Chemical Co. v. Sumitomo Chem.* Co.. Ltd.. 257 F.3d 1364, 1372 (Fed. Cir. 2001). To determine that meaning, the court must first look to how the words of the claims themselves define the scope of the patented invention, and then look to "those sources available to the public that show what a person of skill in the art would have understood [the] disputed claim language to mean." *Phillips.* 415 F.3d at 1314; see also *Vitronics Corp. v. Conceptronic, Inc..* 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). The court must construe the entire claim, including any preamble, so long as it gives life and meaning to the invention claimed. See *Pitney Bowes. Inc. v. Hewlett-Packard Co..* 182 F.3d 1298, 1305 (Fed. Cir. 1999).

For some claim terms, the ordinary meaning may be readily apparent, and construction of those terms therefore "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips.* 415 F.3d at 1314. If technical terms are used, the court may also "consult scientific dictionaries and technical treaties at any time" because "technical terms often have an 'ordinary meaning' as understood by one of skill in the art, although these same terms may not be readily familiar to a judge, or may be familiar only in a

different context." *Dow Chemical*. 257 F.3d at 1372. The meaning of a disputed claim term should be resolved primarily in light of the "intrinsic evidence of record, i.e., the patent itself, including the claims, its specification and, if in evidence, the prosecution history." *Vitronics.* 90 F.3d at 1582; see also *Phillips*, 415 F.3d at 1316 (holding that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction"). The Court should reject attempts to "import [] limitations from the specification into the claim." *Phillips*, 415 F. 3d at 1323.   The Court appreciates the parties' attempt to clarify many term in the claims at issue but finds that the actual language used in the claims is clearer than the proposed modifications, and therefore rejects many of the proposed modifications.

II. Claim Construction

1. As to the Silence Coding Patents, the Court will address the construction of claim terms in Claims 1-3, 7, 9, 16, 17 of U.S. Patent No. 6,256,606, titled "Silence description coding for multi-rate speech codecs," and Claims 1, 13 and 14 in U.S. Patent No. 7,120,578, also titled "Silence description coding for multi-rate speech codecs." The '606 and '578 patents relate to an aspect of speech coding that is used to model the silence, or background noise, that exists between spoken words.

As to the term "independent of the speech coding mode," Plaintiff WiAV proposes a construction of "independent" that is consistent with the ordinary meaning of the word. WiAV maintains that "independent" does not need to be construed, arguing 'independent of' and 'regardless of' are coterminous. Defendants' proposes the construction "[w]ithout using any

3

characteristic of the speech coding mode, including any use of speech parameters in averaging or interpolation, or any use of a silence coding mode based on the same standard as a speech coding mode." This Court finds the Defendants' construction incompatible with the plain meaning of the claim terms.

Defendants' disclaimer arguments are rejected, as the prosecution history has not prohibited independent selection of the silence description coding mode. The doctrine of prosecution disclaimer attaches where an applicant has "unequivocally disavowed a certain meaning to obtain his patent." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010), quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed.Cir. 2003). The Court finds that no "clear and unmistakable" disclaimer has been made in this case. *See SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278 (Fed. Cir. 2005). Consistent with the ordinary meaning, therefore, this Court construes "independent of the speech coding mode" to mean just that.

As to the claim terms "a segment of the speech signal", "the signal" and "at least one of the speech signal segments" in Claim Nos. 1-3, 7, 9, 16, and 17, this Court finds that no construction of these terms is necessary.

As to the claim term "present speech signal" in Claim No. 9, this Court finds that no construction is necessary.

As to the claim terms "selects a coding mode to at least one of the speech signal segments independent of a coding mode that the processing circuit selectively applies to ... a present speech signal [segment] . . ." / "coding mode is selectively applied to at least one of the speech signal segments independent of at least one additional predetermined coding mode that the processing circuit selectively applies to ... a present speech signal segment . . ." in Claim Nos. 9

4

and 17, this Court finds that no construction is necessary. The Court leaves the question of indefiniteness of these claims for another day.

As to the term "discontinuous transmission mode" in Claim 13 of the '578 patent, this Court finds that no construction is necessary.

2. As to the Adaptive Tilt Compensation Patent, U.S. Patent No. 6,385,573 the Court construes the following disputed claim terms.

As to the claim term "synthesized residual signal," WiAV proffers the construction "a residual signal generated from fixed and adaptive codebook contributions that exist at any point prior to synthesis." Defendants propose "a signal that is the resultant sum of the fixed and adaptive codebook contributions that exists prior to any synthesis." This Court construes "synthesized residual signal" to mean "a residual signal generated from fixed and adaptive codebook contributions that exist at any point prior to synthesis."

As to the term "codebook," the Court adopts the construction to which the parties have agreed.

As to the claim term "adaptive tilt compensation" in Claim 1 of the '573 Patent, WiAV proposes that the term be construed as "adjustments to spectral tilt using one or more parameters that change." Defendants seek to construe the term as "compensating for the frequency and amplitude losses that occur throughout the entire process without regard to the use of the short-term post filter." This Court finds that contrary to the Defendants' argument, there has been no clear and unmistakable disclaimer so as to exclude tilt compensation in the post-filter from the scope of the claims. Therefore, this term is construed to mean "adjustments to spectral tilt using one or more parameters that change."

3. As to the the Pitch Lag Patents, U.S. Patent No. 7,266,493 and U.S. Patent No. 6,507,814, the Court construes the terms as follows.

The parties agree to the construction "the temporal measure of a repetitive aspect of a speech signal" for the term "pitch lag." The Court adopts this construction.

The Court finds that the term "[d]etermining a neighboring temporal relationship between one or more of the plurality of pitch lag candidates and one or more previous pitch lag values" does not require construction. (Claims 5–7, 9, 20–22, and 24)

As to the term "pitch lag candidates," WiAV proposes the construction "a set of pitch lags from which the pitch lag for the current frame is selected." Defendants propose "a plurality of pitch lag values, each with a corresponding correlation value that is a maximum of a plurality of correlation values." The Court construes "pitch lag candidates" to mean "a set of pitch lag values from which the pitch lag for the current frame is selected."

As to the term "adaptive codebook", the parties agree to the construction "collection of excitation vectors that are not fixed." The Court adopts this construction.

The Court finds that the terms "comparing the identified pitch lag candidates to at least one previous pitch lag value for a previous interval; to identify at least one favored one of the pitch lag candidates that falls within a temporal neighborhood of the previous pitch lag value" do not require construction.

This Court finds that "detecting a first timing relationship between at least one favored one of pitch lag candidates and a previous pitch lag, where the first timing relationship is present

if at least one favored one of the pitch lag candidates falls within the temporal neighborhood of the previous pitch lag" does not require construction.

It is therefore ORDERED that the claim terms be defined as stated above.

August 8, 2011
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge